# In the United States Court of Federal Claims

No. 22-38 C
Filed: April 22, 2022
Re-issued: May 4, 2022[1]

| | |
|---|---|
| D&J ENTERPRISES, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant,* | ) |
| | ) |
| and | ) |
| | ) |
| DRC EMERGENCY SERVICES LLC, | ) |
| | ) |
| *Defendant-Intervenor.* | ) |
| | ) |

*Carl A. Gebo*, Gebo Law LLC, Atlanta, GA, for Plaintiffs.

*Geoffrey M. Long*, Trial Attorney, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the Defendant, with *Tristan S. Brown* and *Rebecca E. Martinez*, U.S. Army Corps of Engineers, *of counsel*.

*Kyle R. Jefcoat*, Latham & Watkins LLP, Washington, D.C., for Defendant-Intervenor, with *David R. Hazelton*, *Julia A.C. Lippman*, and *Joshua J. Craddock*, *of counsel*.

## OPINION AND ORDER

**MEYERS, Judge**.

In this post-award bid protest, D&J Enterprises challenges the best value determination the U.S. Army Corps of Engineers made when it chose to award a contract for disaster cleanup

---

[1] The Court initially filed this opinion under seal so that the Parties could propose redactions. The Parties jointly proposed limited redactions, which the Court makes with bracketed ellipses ("[ … ]") below.

services to DRC Emergency Services.  According to D&J, the Corps improperly weighted the non-price factors and failed to explain and document the substantive differences that it relied upon in awarding the contract to DRC despite its higher-priced proposal.  Because the Corps' award decision was rational, documented, and well-supported by the record, the Court denies D&J's Motion for Judgment on the Administrative Record and for Permanent Injunctive Relief. The Court grants the Government's and DRC's Cross-Motions for Judgment on the Administrative Record.

## I.     Background

### A.     Solicitation and Award Background

The Corps issued Solicitation No. W912EK18R0022 in May 2019.  ECF No. 18-2 at AR 278.[2]  The solicitation divided the United States and its territories into 20 regions and sought proposals for "contract[s] for managing disaster generated debris after any natural or man-made catastrophe or major disaster" supported by the Corps in each region.  *Id.* at AR 1025, 1299-1301.  The Corps conducted two separate procurements under the solicitation—an unrestricted competition allowing full and open competition and a competition restricted to small businesses. *Id.* at AR 1299.

In April 2020, the Corps awarded the unrestricted contracts for each region, but it cancelled the awards and amended the solicitation following a series of protests filed at the United States Government Accountability Office ("GAO").  ECF No. 21-1 at 3 (citing ECF No. 18-2 at AR 881-82).  In response to the amended solicitation, five offerors, including D&J and DRC, submitted final proposal revisions for the Region 3 Contract.  Region 3 covers the Great Lakes and Ohio River Division, which includes Kentucky, Indiana, Michigan, Ohio, Tennessee, and West Virginia.  ECF No. 18-2 at AR 1300.

### B.     Proposal Requirements and Evaluation Criteria

Under the solicitation, the Corps evaluated offerors' proposals based on the following evaluation factors: management/technical approach, past performance, small business participation plan, and price.  ECF No. 19-8 at AR 11733-34.  The relative importance of each was:

---

[2] Because the Administrative Record in this case is electronic, the Court does not cite to AR "Tabs" because the tabs exist only on the Government's index and are not correlated to anything on the docket.  Some tabs span multiple docket entries, and some docket entries contain multiple tabs.  AR Tabs are, therefore, unhelpful in locating cites to the Administrative Record in this case.  To facilitate review, the Court cites to the docket entry where the cited material is located and the AR page number.

| FACTOR | Relative Importance to Other Factors |
|---|---|
| I. Technical/Management Approach | Equal in importance to factor II but more important than factor III |
| II. Past Performance | Equal in importance to factor I but more important than factor III |
| III. Small Business Participation (Applicable to unrestricted proposals ONLY) | Least important non-price factor |
| IV. Price | When combined, the non-priced factors are approximately equal to price. |

ECF No. 18-2 at AR 1302.  Despite this ranking of factors, the solicitation makes clear that "[t]he Government will select for award the proposal that is most advantageous and **represents the best overall value** to the Government." *Id.* (emphasis in original).  And "the award may not necessarily be made to the lowest price offered or the highest rated non-price proposal." *Id.*

    The factors most relevant to D&J's protest are management/technical approach and past performance.  For the management/technical approach rating, the solicitation provides that "[t]he Government intends to give greater consideration to proposals with a staffing approach, deployment/mobilization plan, management/operations plan, and safety plan that each demonstrate a . . . clear understanding of how to best meet the Government's unique debris removal requirements in each specific region." *Id.* at AR 1303.  As part of the evaluation, the Government would assign "significant strengths, strengths, significant weaknesses, weaknesses, deficiencies, risks, and uncertainties." *Id.*  As relevant here, a "significant strength" is "an aspect of an Offeror's proposal that has appreciable merit or appreciably exceeds specified performance or capability requirements in a way that will be appreciably advantageous to the Government during contract performance." *Id.* at AR 1313.  And a "strength" is "an aspect of an Offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will be advantageous to the Government during contract performance." *Id.*

    Using the results of this evaluation, the source selection authority ("SSA") assigned a combined technical/risk rating to each offeror based on the below rating system:

3

**Combined Technical / Risk Rating[3]**

| Adjectival Rating | Description |
|---|---|
| Outstanding | Proposal indicates an exceptional approach and understanding of the requirements and contains multiple strengths, where risk of unsuccessful performance is low. |
| Good | Proposal indicates a thorough approach and understanding of the requirements and contains at least one strength, where risk of unsuccessful performance is low to moderate. |
| Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements, where risk of unsuccessful performance is no worse than moderate. |
| Marginal | Proposal has not demonstrated an adequate approach and understanding of the requirements, and/or risk of unsuccessful performance is high. |
| Unacceptable | Proposal does not meet requirements of the solicitation, and thus, contains one or more deficiencies, and/or risk of unsuccessful performance is unacceptable.  Proposal is un-awardable. |

*Id.* at AR 1303-04.

The Corps evaluated past performance based on the recency, relevancy, and quality of three to five past projects that offerors submitted for consideration.  *Id.* at AR 1295-96, 1306-07. The Corps assigned each project a relevancy rating of Very Relevant, Relevant, Somewhat, or Not Relevant.  *Id.* at AR 1306-07.  Based on its evaluations of past performance, the Government assigned each offeror one of the following ratings:

---

[3] The SSA used a color-coding system as well as an adjectival rating.  Because the Parties argue only about adjectival ratings, the Court does not address color coding.

| Performance Confidence Assessments | |
|---|---|
| **RATING** | **DESCRIPTION** |
| Substantial Confidence | Based on the offeror's recent/relevant performance record, the Government has a high expectation that the offeror will successfully perform the required effort. |
| Satisfactory Confidence | Based on the offeror's recent/relevant performance record, the Government has a reasonable expectation that the offeror will successfully perform the required effort. |
| Neutral Confidence | No recent/relevant performance record is available or the offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonably assigned. The offeror may not be evaluated favorably or unfavorably on the factor of past performance. |
| Limited Confidence | Based on the offeror's recent/relevant performance record, the Government has a low expectation that the offeror will be able to successfully perform the required effort. |
| No Confidence | Based on the offeror's recent/relevant performance record, the Government has no expectation that the offeror will be able to successfully perform the required effort. |

*Id.* at AR 1308.

### C.     The Corps Awards the Region 3 Contract to DRC

#### 1.     Evaluation of Non-Price Factors

In August 2021, the source selection evaluation board ("SSEB") issued its final consensus report based on its evaluations of the offerors' final proposals. ECF No. 19-8 at AR 11003-650. The SSEB assigned D&J a rating of Acceptable and DRC a rating of Outstanding for the management/technical factor. *Id.* at AR 11189, 11200. The SSEB assessed DRC's proposal to have three significant strengths and three strengths, while D&J was not assessed to have any strengths or significant strengths. *Id.* For past performance, the SSEB found four of D&J's submitted projects Somewhat Relevant and one of them Relevant, and accordingly assigned D&J a rating of Satisfactory. *Id.* at AR 11196. DRC also got a Satisfactory rating for past performance, based on its three Somewhat Relevant and two Relevant projects. *Id.* at AR 11209. In October 2021, the source selection advisory council ("SSAC") reviewed the SSEB's findings and issued a report providing a comparative analysis of the offerors' proposals and recommending the Region 3 Contract be awarded to DRC. *Id.* at AR 11705-30.

The SSA conducted his review based "upon the evaluation criteria set forth in [the amended solicitation]" and performed an "integrated assessment and comparison of the proposals' strengths, weaknesses, and risks." *Id.* at AR 11731. The SSA assigned the following ratings to each offeror:

5

| Region 3 - LRD | | | | |
|---|---|---|---|---|
| **Contractor** | **Management/Technical** | **PP Confidence** | **Small Business** | **Price** |
| D&J | Acceptable | Satisfactory | Outstanding | $383,104,136 |
| DRC | Outstanding | Satisfactory | Outstanding | $453,442,799 |
| [ … ] | Acceptable | Satisfactory | Outstanding | [ … ] |
| [ … ] | Good | Satisfactory | Outstanding | [ … ] |
| [ … ] | Good | Substantial | Outstanding | [ … ] |

*Id.* at AR 11749.

For the management/technical factor, the SSA concluded that D&J "has no identified strengths or weaknesses" and agreed with the SSEB and SSAC's assigned rating of Acceptable. *Id.* at AR 11737.  He also concurred with the SSEB and SSAC's assigned rating of Outstanding for DRC and agreed that DRC had "three significant strengths . . . and three strengths" for this factor.  *Id.*

For its staffing approach, the SSA gave DRC a significant strength for its "ability to comprehensively define and describe how the staffing approach would occur during a large debris removal mission of a similar type" as that described in the schedule of prices for Region 3. *Id.* at AR 11738.  Specifically, DRC's proposal:

> [P]rovided a very detailed overview and plan of how they would accomplish a large mission in this Region and provided actual sector maps, staffing requirements, numbers of crews and how many subcontractors would be utilized, along with number of crews required.  The proposal showed the Offeror investigated and took into consideration population, urban areas, parks, as well as other key elements.

*Id.*

The SSA also found DRC to have one significant strength and two strengths for its deployment/mobilization plan.  *Id.* at AR 11738-39.  DRC's significant strength in this category pertained to DRC's "ability to comprehensively define and describe the deployment/mobilization plan during a large debris removal mission of a similar type" as that described in the schedule of prices for Region 3.  *Id.* at AR 11739.  Specifically, the SSA found that DRC "expanded upon their staffing approach to provide a deployment/mobilization plan with locations of potential disposal sites and landfills, and detailed information on permitting, immunizations and training.

They provided response time frames for their primary subcontractors and what resources the subcontractors can bring to the table." *Id.*

DRC's first strength for its deployment/mobilization plan was DRC's "approach to mobilize/demobilize personnel and resources immediately after Task Order notice to proceed and at Task Order completion," as evidenced by "detailed figures depicting [DRC's] methodology and capabilities." *Id.* at AR 11738. DRC "provided a timeline of mobilization activities, defining the processes in detail to ensure efficiency of work activities, which exceeds the minimum requirements of the solicitation." *Id.* DRC's second strength was its "plan for rapid deployment, formation of a contingent workforce, and appropriate in-processing activities." *Id.* Specifically, DRC "proposal provided a detailed plan for rapid deployment that includes over 2,500 trucks and 6,000 pieces of support equipment . . . available for immediate use." *Id.*

The SSA also found DRC's management/operations plan to merit a strength and a significant strength. *Id.* at AR 11739-40. The significant strength was based on DRC's "ability to comprehensively define and describe the management/operations plan during a large debris removal mission of a similar type" as that described in the schedule of prices for Region 3. *Id.* Again, the SSA stated that DRC's "proposal provided a very detailed project overview and plan" and "expanded upon their staffing approach and deployment/mobilization plan to provide a management/operations plan . . . with attention to details to include locations of potential disposal sites and landfills, and detailed information on permitting, immunizations and training" as well as providing "response time frames for their primary subcontractors and what resources the subcontractors can bring to the table." *Id.* at AR 11740. DRC's strength for its management/operations plan was due to its "plan to mitigate impacts of lack of available labor, lack of available equipment, lack of disposal sites, surges in debris removal requirements and poor performance of [subcontractors]." *Id.* at AR 11739. DRC's "proposal provided 14 preidentified Disposal Site Locations throughout the Region with illustrations that provided procedures for avoiding and mitigating poor subcontractor performance." *Id.*

For past performance, the SSA agreed with the SSEB and SSAC's rating of D&J as Satisfactory. *Id.* at AR 11742. While the SSA found all D&J's projects to be of high quality, he concluded that "[t]here were no projects listed for flood response" and that D&J's largest size project was "still well below being considered a large project per the solicitation." *Id.* at AR 11742-43. The SSA also concurred with the SSEB and SSAC's rating of DRC as Satisfactory, *id.* at AR 11743, although he determined that one of DRC's projects the SSAC found Relevant should have been classified as Very Relevant given its "value of $38M and removal of 2.1M cubic yards of debris." *Id.* But he found that "this change does not impact the overall confidence rating for DRC." *Id.* Overall, the SSA based his Satisfactory confidence rating of DRC on one Very Relevant flood project, a Relevant hurricane project that was considered "large" under the solicitation, and three Somewhat Relevant projects. *Id.*; ECF No. 22 at 14.

For the small business participation factor, the SSA agreed with the SSEB and SSAC's ratings of Outstanding for both D&J and DRC. ECF No. 19-8 at AR 11743. While both proposals were found to "contain[] multiple strengths," he "found no meaningful distinction between the two proposals with regard to this factor." *Id.* at AR 11755.

2.    The SSA's Trade-off Analysis

The SSA conducted a best value trade-off analysis of the proposals that included his "rationale for business judgments and tradeoffs made, including benefits associated with additional costs." *Id.* at AR 11749.  He began by "identifying the highest rated proposals for the non-price factors," which he found to be DRC and [ … ].  *Id.* at AR 11750.  He affirmed DRC's Outstanding rating for the management/technical factor, which was supported by its assigned strengths and significant strengths.  He determined that DRC's detailed proposal "exceed[ed] the solicitation requirements and demonstrate[d] that the offeror fully understands the debris removal challenges associated with a large mission." *Id.*  He found that DRC's approach "significantly lowers the risk of delays in commencement of work and increases the confidence of the Government that DRC will be able to work in all affected areas simultaneously." *Id.*

For past performance, the SSA acknowledged DRC's Satisfactory rating.  *Id.*  He noted that one of the Somewhat Relevant projects "took place within Region 3" and that "[w]hile only one flood specific past performance project was submitted, DRC also demonstrated experience on a large hurricane project which produced similar types of debris and showed high quality performance." *Id.*  Lastly, the SSA acknowledged that DRC received an Outstanding rating "supported by five documented strengths" for the small business participation factor.  *Id.* at AR 11751.

Next, the SSA considered [ … ] proposal, "which had the second-highest ratings on non-price factors."  ECF No. 22 at 16.  He found that "[o]f the highest rated proposals, DRC has the lowest proposed price," although "[ … ] remains under consideration for award."  ECF No. 19-8 at AR 11752.  He then removed [ … ]—two of the highest-priced proposals—from consideration because he found that "the qualitative merits of [the] proposal[s] do not offer value to the Government that warrant a trade-off analysis for [their] higher price."  *Id.* at AR 11752-53.

The SSA next performed a trade-off analysis between D&J—the lowest-priced proposal—and DRC "to determine whether the benefits of the non-price strengths in a higher rated proposal warrant the price premium."  *Id.* at AR 11753.  For the management/technical factor, he acknowledged that D&J "met the requirements of the solicitation but has no documented strengths," which resulted in its rating of Acceptable.  *Id.*  Regarding past performance, the SSA found that all of D&J's submitted projects were high quality, and, even though they were small, "D&J has still provided enough past performance to provide a reasonable expectation that they will be successful on a flood mission in this region," resulting in its Satisfactory rating.  *Id.* at AR 11754.  Lastly, he recognized that D&J received an Outstanding rating "supported by three strengths and one significant strength" for the small business participation factor.  *Id.*

The SSA determined that "[i]n comparing assigned adjectival ratings, DRC's proposal is higher rated." *Id.*  However, because DRC's proposed price was 18% higher than D&J's, he examined "the underlying merits of the proposals to determine if DRC's proposal provides qualitative advantages that warrant the price premium as compared to D&J's lower priced proposal." *Id.*

8

Ultimately, the SSA found that "DRC's proposal is superior with regard to the non-price factors and offers benefits that are worth the additional $70,338,663 price premium." *Id.* at AR 11755. He based this decision on several elements of DRC's proposal pertaining to the management/technical and past performance factors that he found superior to D&J's. For the management/technical factor, he found that "DRC met or exceeded all the requirements of the solicitation and has three significant strengths . . . and three strengths." *Id.* He concluded that DRC's proposal "shows an extraordinary understanding of the solicitation requirements and in-depth knowledge of debris removal" accompanied by "regional specific modeling." *Id.* at AR 11755-56. According to the SSA, such qualities provide "a benefit to the government because we know that they will be able to provide [an] event specific management operations plan" and the "risk of unsuccessful performance by DRC to the Government is low." *Id.* at AR 11756. D&J's proposal, on the other hand, "met all the requirements of the solicitation but does not include any strengths." *Id.* The SSA described D&J's approach and understanding of the requirements as "adequate" and the risk of unsuccessful performance as "no worse than moderate." *Id.*

For past performance, the SSA acknowledged that both D&J and DRC received a Satisfactory rating. *Id.* But he recognized that D&J provided no flood projects and its "largest size project is still well below being considered a 'large project' per the solicitation." *Id.* Thus, he determined that "DRC has an advantage over D&J because of their demonstrated Very Relevant, high-quality experience with a flood mission and the experience with larger magnitude projects." *Id.* at AR 11754.

Based on his comparison of the two proposals, the SSA determined that "DRC's proposal is a better value than D&J" and he eliminated D&J from further consideration. *Id.* at AR 11756. Next, he performed a trade-off analysis between DRC and [ … ], and found "few meaningful distinctions between the non-price portions of the two proposals" such that there was no "justification to determine that [ … ] higher priced proposal . . . is worth the price premium . . . as compared to DRC's lower priced proposal." *Id.* at AR 11758. Therefore, he eliminated [ … ] from consideration and determined that DRC's proposal presented "the best overall value to the Government." *Id.* He found DRC's price to be fair and reasonable and accordingly selected DRC as the awardee.

The Government awarded the Region 3 Contract to DRC in November 2021. ECF No. 19-9 at AR 11924. D&J initially protested the award at the GAO in December 2021 but withdrew that protest on January 6, 2022. ECF No. 19-11 at AR 12158, 12246. On January 11, 2022, D&J filed a Bid Protest Complaint with this Court seeking (1) "[a] Declaratory Judgment that [the Corps'] award of the Region 3 (LRD) Contract to DRC is invalid and has no effect" and (2) "[a] Temporary Restraining Order and Preliminary Injunction enjoining performance of the Region 3 (LRD) Contract awarded to DRC until the Court decides this protest on the merits." ECF No. 1 at 24 (Request for Relief).

## II.    Jurisdiction and Standing

Neither the Government nor Defendant-Intervenor appear to dispute that this Court has jurisdiction over this case under the Tucker Act, 28 U.S.C. § 1491(b)(1). *See, e.g.*, ECF No. 23-1 at 7. The Tucker Act provides this Court with jurisdiction over post-award challenges to

contract awards brought by an interested party. *Vectrus Sys. Corp. v. United States*, 154 Fed. Cl. 29, 40 (2021) (citing *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012)). To qualify as an "interested party" a protester must be an actual or prospective bidder who has a direct economic interest in the procurement. *Id.* (citations omitted). "An actual or prospective offeror has a direct economic interest if it suffered a competitive injury or prejudice as a result of an alleged error in the procurement process." *Id.* (citations omitted). Competitive injury or prejudice can be shown by demonstrating that the plaintiff "would have had a 'substantial chance' of winning the award 'but for the alleged error in the procurement process.'" *Id.* (citing *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009)).

D&J satisfies this standard. The SSA determined that D&J's proposal was the lowest-priced proposal and was technically acceptable. ECF No. 19-8 at AR 11749. If D&J establishes that its allegations are true, it would have a substantial chance of winning the award. *Id.* at AR 11753. Accordingly, D&J has standing, and the Court has jurisdiction over its claims.

## III.   Standard of Review

### A.   Motion for Judgment on the Administrative Record

A motion for judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims provides an expedited "trial on a paper record, allowing fact-finding" by the Court. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The Court must determine whether a party has met its burden of proof based on the evidence in the record. *Id.* at 1355. Unlike a motion for summary judgment, the Court may grant a motion for judgment on the administrative record even if there is a genuine dispute of material fact. *Id.* at 1355-56. In lieu of an evidentiary trial, the Court references the administrative record to resolve any question of fact. *Id.* at 1356.

### B.   Bid Protests

This Court's review of an agency's procurement action requires a two-step analysis. First, the Court must determine whether the Government's conduct was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1285 (Fed. Cir. 2010); 28 U.S.C. § 1491(b)(4). If this standard is met, the Court must "determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum,* 404 F.3d at 1351.

In determining whether an agency's actions were arbitrary or capricious, the Court must decide whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Savantage Fin. Servs.*, 595 F.3d at 1285-86 (quoting *Weeks Marine*, 575 F.3d at 1358). This standard is "highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). Therefore, although the agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" the Court will "uphold a decision of less than ideal clarity if the agency's

path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations omitted).

Where, as here, the contract was awarded based on a best-value analysis, "the contracting officer ha[s] even greater discretion than if the contract were to have been awarded on the basis of cost alone." *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (citation omitted). The Federal Circuit has made clear that "[p]rocurement officials have substantial discretion to determine which proposal represents the best value for the government." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (citations omitted). As such, "a plaintiff bears a significant burden to demonstrate error in the [SSA's] tradeoff analysis . . . ." *Mil-Mar Century Corp. v. United States*, 111 Fed. Cl. 508, 553 (2013) (alteration in original) (citations omitted). Indeed, the "Court is generally loath to disturb a best-value award so long as the agency documents its final award decision and includes the rationale for any business judgments and tradeoffs made." *PAE Aviation & Tech. Servs., LLC v. United States*, 156 Fed. Cl. 454, 471 (2021) (citing *Afghan Am. Army Servs. Corp. v. United States*, 90 Fed. Cl. 341, 360 (2009) (other citations and internal quotation marks omitted)).

## IV. Discussion

### A. The SSA complied with the terms of the solicitation and adequately documented his rationale for awarding the Region 3 Contract to DRC.

D&J argues that the Region 3 Contract award was based on "a fatally flawed Best Value Analysis that violated the solicitation's terms and federal procurement law, and which was arbitrary and capricious because it failed to articulate the value gained from the alleged advantages of DRC's proposal." ECF No. 21-1 at 2. D&J's challenge is solely to the SSA's best value trade-off analysis; the substance of D&J and DRC's respective ratings remains unchallenged. *See* Pl.'s Reply, ECF No. 26 at 1 ("D&J did not challenge the individual scoring assigned to its non-priced technical factors. Nor did D&J challenge the individual scoring assigned to DRC's non-priced technical factors. Instead, D&J has chosen to focus its attack on [the Corps'] best value tradeoff decision . . . .").

In negotiated procurements, the SSA "[s]elect[s] the source or sources whose proposal is the best value to the Government." Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 15.303(b)(6) (citations omitted). But the proposal that presents the best value to the Government is not always the one carrying the lowest price. Accordingly, the regulations provide for an evaluation process that "permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal." FAR § 15.101-1(c). In such circumstances, "[t]he perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file in accordance with 15.406." *Id.* However, the regulations are clear that "[a]lthough the rationale for the selection decision must be documented, that documentation *need not quantify* the tradeoffs that led to the decision." FAR § 15.308 (emphasis added).

D&J first argues that the Region 3 Contract award violated the solicitation's terms because the SSA failed to adhere to the "relative importance of the evaluation factors" when he determined that DRC provided the best overall value to the Government despite its higher price.

ECF No. 21-1 at 16-21.  The solicitation provides that the management/technical factor is equal to past performance and that small business participation is the least important non-price factor. ECF No. 18-2 at AR 1302.  And "[w]hen combined, the non-priced factors are approximately equal to price."  *Id.*  D&J acknowledges that the SSA was not required to award the contract to the lowest-priced offeror but insists that DRC did not "present significant and substantive advantages across all three of the non-price factors or at least the two most important non-price factors."  ECF No. 21-1 at 18.  D&J contends that, because D&J and DRC received the same adjectival ratings on two of the three non-price factors (past performance and small business participation), the Government "would have had to show that the advantages inuring to the Government's benefit solely from DRC's Factor I – Management/Technical Approach proposal was worth the additional than [sic] +$70 Million premium the Government would pay for it."  *Id.* at 18-19.

Despite D&J's characterization of the analysis, however, the SSA did find that DRC's proposal was superior to D&J's in the two most important non-price factors.  The SSA found significant advantages in DRC's proposal for the management/technical factor because of the three strengths and three significant strengths that he found in DRC's proposal compared to none in D&J's.  ECF No. 19-8 at AR 11754.  Indeed, DRC's management/technical adjectival rating was two levels above D&J's.  And the SSA also found DRC's past performance to be substantively better than D&J's even though they both got the same adjectival rating.  *Id.* at AR 11754-55.

And D&J's premise that because the two offerors' adjectival ratings were the same for the past performance and small business participation factors, the SSA must have only found advantages in DRC's favor under the management/technical factor, is incorrect.  The SSA's analysis was not just based on adjectival ratings.  He also considered the factors that went into the assigned adjectival ratings, which was entirely appropriate.  *See Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009) ("To determine whether and to what extent meaningful differences exist between proposals, the agency should consider both adjectival ratings and information on the proposals' advantages and disadvantages.  Courts should look beyond the adjectival ratings because proposals awarded the same adjectival ratings are not necessarily equal in quality.") (citations omitted).  When comparing DRC's and D&J's past performance, the SSA "explicitly considered the 'underlying merits' of the proposals and concluded that 'DRC has an advantage over D&J because of [its] demonstrated Very Relevant, high-quality experience with a flood mission and the experience with larger magnitude projects as compared to D&J.'"  ECF No. 22 at 28 (alteration in original) (quoting ECF No. 19-8 at AR 11754).  In doing so, the SSA clearly outlined DRC's advantages over D&J for both the management/technical and past performance factors.

D&J makes much of the SSA's use of the word "however" in his analysis of the past performance factor.  In relevant part, the SSA stated:

> In my independent assessment, based on the information above I consider DRC's qualitative merits to be higher than D&J's for Factor II, Past Performance, because of DRC's demonstrated experience with a flood mission as well as a large hurricane

    mission.  However, I believe that both D&J and DRC could
    successfully perform debris mission requirements.

ECF No. 26 at 10 (quoting ECF No. 19-8 at AR 11755).  D&J argues that the word "however" is
doing critical work here and indicates that the SSA found "no material distinctions" between
D&J and DRC for the past performance factor.  *Id.* at 10-12.  But recognizing that both offerors
"could successfully perform debris mission requirements" is not a statement that there is no
material difference between the two proposals.  Such a reading would require the Court to ignore
the sentence immediately preceding "however" in which the SSA explains that he finds "DRC's
qualitative merits *to be higher* than D&J's . . . ."  ECF No. 19-8 at AR 11755 (emphasis added).
The Court declines to do so.  And D&J's argument fails to recognize that when the SSA intended
to say there were "no material distinctions" between DRC and D&J, he did so explicitly.  For
example, when evaluating the proposals for small business participation, the SSA "found no
meaningful distinction between the two proposals with regard to this factor and determined that
the Offerors are essentially equal with regard to Factor III."  *Id.*

   In any event, under the solicitation "the combined non-price factors were 'approximately
equal' to price" when combined.  ECF No. 22 at 25.  The use of the word "approximately"
suggests that the SSA had flexibility in balancing the price and non-price factors, such that
D&J's assertion that DRC was required to present significant and substantive advantages across
at least two or three non-price factors is unsupported (even if the Court ignores that the SSA
determined DRC to be superior in the two most important non-price factors).  S*ee, e.g.*, *Am.
Corr. Healthcare, Inc. v. United States*, 137 Fed. Cl. 395, 419 (2018) (finding that "[a]lthough
the adjectival ratings for the offerors' technical proposals were similar" the court could not say
that the agency's decision "reflects a misapplication of the solicitation's factor weighting scheme
and is therefore unreasonable, especially in light of the substantial deference it must afford to the
[agency's] tradeoff analysis.").

   Next, D&J argues that the SSA violated federal procurement law by not properly
documenting his rationale for making an award to other than the lowest-priced proposal.  D&J
acknowledges that the SSA was allowed to choose an offer other than the lowest priced but
insists that the SSA did not adequately document his rationale in accordance with FAR § 15.101-
1(c) because he did not adequately explain how DRC's purported advantages "impact contract
performance or agency needs."  ECF No. 21-1 at 24.  D&J is correct that the SSA was required
to "explain how the technical merits [of DRC's proposal] will result in beneficial impact to the
agency and how those beneficial impacts warrant the price paid for them."  *Id.* at 25 (citation
omitted).  But this is what the SSA did.

   The SSA found DRC to be superior in the two most important non-price factors and
explained why that superiority was worth the price premium to the Government.  He even
explained why DRC's strengths provided an advantage specific to Region 3.  *See, e.g.*, ECF No.
19-8 at AR 11738, 11755 (finding that DRC's proposal took into consideration region-specific
factors and describing some of DRC's past performance projects as nearly identical in scope or
"more similar in magnitude" to the projects expected in Region 3).

   For the management/technical approach factor, the SSA recognized three significant
strengths and three strengths in DRC's favor and explained how these strengths would benefit

the Government.  As an example, the SSA accorded DRC a significant strength for its "ability to comprehensively define and describe how the staffing approach would occur during a large debris removal mission of a similar type" as that described in the schedule of prices for Region 3.  *Id.* at AR 11738.  Here, the SSA found that DRC's proposal "provided a very detailed project overview and plan of how they would accomplish a large mission in this Region."  *Id.*  DRC "provided [ … ] maps, staffing requirements, [and] number of [ … ] . . . [which] showed the Offeror investigated and took into consideration population, urban areas, parks, as well as other key elements."  *Id.*  The SSA explained that this "level of detail" gives the Government "a high level of confidence that the Offeror fully understands the requirement and that their staffing approach far exceeds the minimum requirement of the solicitation," which "significantly lowers the risk of delays in commencement of work and increases the confidence of the Government that the Offeror will be able to work in all affected areas simultaneously as the Offeror has an extensive, detailed and well-planned approach to accomplish the mission."  *Id.*  The SSA similarly outlined DRC's other five strengths and significant strengths for the management/technical approach factor and detailed the accompanying benefits to the Government.  *See id.* at AR 11738-40.  Each of these strengths related to aspects of DRC's proposal that the SSA found would likely speed its response to a disaster in Region 3.  The importance of the speedy response is apparent on the face of the solicitation and Performance Work Statement, which called for a "quick and immediate response" to disasters.  ECF No. 18-2 at AR 1030; *see also id.* at AR 303-04 ("The Contractor shall commence mobilization immediately upon issuance of a task order . . . .").

D&J also alleges that the SSA impermissibly "did not discuss D&J's Factor I proposal in any substantive manner."  ECF No. 26 at 19.  But, as the Government argues, the SSA concurred with and adopted the SSEB and SSAC's more fulsome analysis of D&J's proposal for this factor "as he was free to do in the course of exercising his discretion."  ECF No. 28 at 4 (citing ECF No. 19-8 at AR 11737).  In addition, the SSA independently found that "D&J met all requirements of the solicitation and has no identified strengths or weaknesses in the technical proposal."  ECF No. 19-8 at AR 11737.

For the past performance factor, the SSA specifically pointed to DRC's flood project and larger magnitude projects as providing an advantage over D&J.  *Id.* at AR 11754.  He found that DRC's "experience removing 5.6M cubic yards of debris for the hurricane project is more similar in magnitude of the projects expected during contract performance for Region 3" and that "DRC's submission of a flood project, while not considered a large project, shows experience in responding to an event of nearly an identical scope to that expected in Region 3."  *Id.* at AR 11755.  Thus, he found that although "both D&J and DRC could successfully perform debris mission requirements," he "consider[ed] DRC's qualitative merits to be higher than D&J's."  *Id.*

After providing a comparative analysis of the "merits and relative weights" of the non-price factors, the SSA determined that "DRC's proposal is superior with regard to the non-price factors and offers benefits that are worth the additional $70,338,663 price premium."  *Id.*  As the Government correctly states, the SSA "discussed the features of DRC's proposal that led to the award of significant strength and strengths, and explained how those features increased his confidence that DRC could successfully perform."  ECF No. 28 at 4 (citing ECF No. 19-8 at AR 11738-41).  In documenting the strengths and accompanying benefits of each proposal and

14

determining that DRC's advantages provided value that was worth the price premium, the SSA satisfied the regulatory requirements for conducting a best value tradeoff.  Such a decision cannot be seen as an abuse of the SSA's substantial discretion.

D&J insists that to comply with the regulations, the agency needed to say "how or to what extent" DRC's advantages added extra value over D&J.  ECF No. 21-1 at 23-25; ECF No. 26 at 18.  D&J contends that the SSA erred in failing to "offer an evaluation of the delta in confidence that the Government has in DRC's ability to perform the contract successfully over the Government's confidence in D&J."  ECF No. 26 at 7.  This argument is difficult to accept given that D&J concedes that the SSA was not required to quantify his tradeoff decisions.  *See* Hr'g Tr., ECF No. 31 at 16:21-22; FAR § 15.308 ("[tradeoff] documentation need not quantify the tradeoffs that led to the decision."); *see also Serco Inc. v. United States*, 81 Fed. Cl. 463, 497 (2008) ("[I]n performing the tradeoff analysis, the agency need neither assign an exact dollar value to the worth associated with the technical benefits of a contract nor otherwise quantify the non-cost factors.") (citations omitted).  It is also not clear that this tradeoff was about confidence that either contractor would be able to perform successfully.  As explained above, DRC's advantages related to the speed with which DRC could get started and perform quickly, not its ability to perform the contract successfully.  And given the contract's requirements relating to rapid mobilization, the SSA could rationally find this likelihood of a quicker response to be worth the price premium.

D&J also suggests that the SSA's decision was deficient in that he improperly parroted the SSEB's language in his discussion of DRC's strengths and weaknesses.  ECF No. 21-1 at 22-23.  D&J is correct that in performing a comparative assessment of the offerors' proposals, "the SSA may use reports and analyses prepared by others" but the source selection decision must "represent the SSA's independent judgment."  FAR § 15.308.  But D&J misunderstands the requirements of FAR § 15.308.  While the regulation requires the SSA to adequately document his or her decision, it also clearly states that "the documentation shall include the rationale for any business judgments and tradeoffs *made or relied on* by the SSA. . . ."  *Id.* (emphasis added).  Thus, the regulation expressly allows the SSA to rely on the board's findings, so long as those findings are sufficiently documented.  *See Akal Sec., Inc. v. United* States, 103 Fed. Cl. 310, 335-36 (2011) (finding that the SSA was not required to write their own separate decision document when they adopted the agency's analysis in full, as long as the agency's rationales were sufficiently documented).  Here, the SSA indicated that he agreed with and adopted many of the SSEB and SSAC's conclusions and those conclusions were adequately documented.  Moreover, he clearly showed independent judgment when he changed DRC's flood project rating from Relevant to Very Relevant and adequately documented the rationale for that decision.  *See* ECF No. 19-8 at AR 11743.

Ultimately, the SSA stated that "[w]hile both proposals provide an acceptable approach, I find the strengths of DRC's proposal to be valuable in planning and managing a debris mission." *Id.* at AR 11754.  He compared the two proposals, found that DRC's proposal offered advantages that he considered valuable in furthering the purpose of the contract (the speedy cleanup after a disaster), and adequately documented his rationale for that decision.  Nothing further was required.

15

**B.     Because the contract award is valid, any error alleged by DRC is harmless error.**

Even though it won the Region 3 Contract, DRC argues that the Corps' evaluation of the proposals was "fundamentally flawed." ECF No. 23-1 at 1. DRC asserts that D&J should have been disqualified from consideration under the terms of the solicitation because (1) its prices were unbalanced, (2) it exceeded the maximum page count, and (3) it "includ[ed] additional documents in its proposal" that were not allowed under the solicitation. *Id.* at 11-12. Furthermore, DRC contends that for the past performance factor, the Corps improperly gave D&J credit for two projects relating to Hurricane Sally, when under the solicitation's terms, "these projects should have been evaluated as one" because a "project" was defined as "all work happening in response to the same disaster." *Id.* at 10 (quoting ECF No. 18-2 at AR 1296).

While it contends D&J should have been disqualified for each of these alleged infractions, DRC's primary argument is that the Government did not perform a proper unbalanced pricing analysis as required by the solicitation and FAR § 15.404-1(g)(2). *Id.* at 12-20. According to DRC, if the Government had properly evaluated D&J's pricing, it would have disqualified D&J from the competition. *Id.* DRC asks this Court to find that these purported deficiencies disqualified D&J.

But as described above, the SSA adequately explained his rational decision. Because the SSA's decision is valid, any error DRC alleges regarding unbalanced pricing or page limits amounts to nothing more than harmless error. DRC won this procurement. It cannot win better. It cannot win more. There is no benefit that will inure to DRC if it wins due to disqualification rather than on the merits. Nor is there any prejudice that befell DRC from these alleged errors. And "[t]o render on [sic] an opinion on an issue that cannot affect the outcome of the case would be advisory, and 'it is quite clear that the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.'" ECF No. 28 at 11 (quoting *Dellew Corp. v. United States*, 124 Fed. Cl. 429, 432 (2015) (citations omitted)).

**C.     D&J is not entitled to injunctive relief.**

D&J seeks a permanent injunction enjoining "award or performance" of the Region 3 Contract unless the Corps re-awards the contract to D&J "or until [the Corps] conducts a proper best value tradeoff analysis supported by proper documentation." ECF No. 21-1 at 29. In awarding injunctive relief under 28 U.S.C. § 1491(b)(2), the Court must consider whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citation omitted). But "[a]bsent success on the merits, the other factors are irrelevant." *Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 357 n.32 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003). As D&J acknowledges, to obtain a permanent injunction it "must show actual success on the merits." ECF No. 21-1 at 26 (citing *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n. 12 (1987)). Because D&J fails on the merits here, the Court declines to award D&J injunctive relief.

16

**Conclusion**

For the foregoing reasons, the Court:

1. **DENIES** Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 21;

2. **GRANTS** the Government's Cross-Motion for Judgment on the Administrative Record, ECF No. 22;

3. **GRANTS** the Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record, ECF No. 23; and

4. Directs the Clerk to enter judgment in favor of the Government and Defendant-Intervenor.

**IT IS SO ORDERED.**

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge

17